By the Court.—Sanford, J.
—The referee has found, and the evidence conclusively shows, that, during *171 the years 1867, 1868 and 1869, the plaintiff was employed by the defendant, as a salesman, and under an agreement that he should receive, as compensation for his services in that capacity, a share of the net profits realized by defendant from each year’s business. During the year, 1867, such share was one-eighth, and amounted to $6,700, of which the plaintiff received in cash, from time to time, during the year, $2,500. Of the residue of his share in such net profits, being $4,200, two-thirds, or $2,800, were paid him in defendants’ notes, at the end of the year. The other third of such residue, $1,400, was retained by the defendant (under an understanding or agreement between the parties, with respect to which there is a conflict of evidence), and has never been paid. During the year 1868, the plaintiff’s compensation was to be four-elevenths and one-half of one-eleventh (4M-llths) of such net profits, and amounted to $15,115, of which he received in cash, from time to time during the year, $3,383. Of the residue of his share in such net profits, being $11,732, two thirds, or $7,821, were paid to him at the end of the year in defendant’s notes. The other third of such residue, $3,911, was retained by the defendant, pursuant to the understanding or agreement, above referred to, or one of similar character, and has never been paid.
During the year 1869, the plaintiff’s compensation was to be four-elevenths (4-llths) of such net profits. It does not clearly appear, from the evidence, what precise amount of net profits was realized from defendant’s business in 1869, and. the finding of the referee, in that regard, as it appears in the printed case (whether through a typographical error, or otherwise), is obviously incorrect. It does, however, sufficiently appear, and the referee has found, that, after deducting from the plaintiff’s share of such net profits the guaranteed salary to which he was entitled, and which he had drawn during the year, there remained of such *172 share, a sum, whereof two-thirds was paid to him in the notes of the defendant, the other one-third being retained by defendant pursuant to the same understanding which had existed in previous years.
The referee has found that the one-third, so retained, amounted to $1,500, adopting a mis-statement of the plaintiff to that effect which he subsequently endeavored to explain and correct.
The evidence tends to show that the net profits largely exceeded the sum specified by the referee, and that, of plaintiff’s share therein, a larger sum than $1,500 was in fact retained by defendant and never paid to him.
There is,' however, little if any dispute about figures, and the error, if there be one, is in favor of the defendant. No point has been made with respect to it by either party on this appeal, and the defendant, • on cross-examination, in response to the question whether he thought Mr. Churchill’s statements as to the profits for each year to be correct, replied, “I presume they were. I presume he got them from°our books.” The controversy, so far as questions of fact are concerned, has turned mainly upon the issue made by the answer with respect to the terms and time of payment of the several sums reserved and retained by the defendant as above stated, out of the share of profits which had been agreed upon as the basis of plaintiff’s compensation.
The answer alleges in substance that on or about January 1, 1867, the defendant employed the plaintiff and promised to pay him for his services, in 1868, one-eighth of the net profits during the year as follows: $2,500 for living expenses, two-thirds of the remainder by defendant’s note as alleged in the complaint, and the remaining one-third upon the maturity of said note, should plaintiff so conduct himself as to fully *173 satisfy defendant, said last payment to he entirely optional with the defendaoit.
The answer also contains like allegations with respect to the employment of defendant on or about January 1 in each of the years 1868 and 1869, on similar terms; the only difference being that in 1868, the plaintiff’s compensation is alleged to have been fixed at four and one-half elevenths of the net profits during that year, and $3,500 to have been allowed him for living expenses; while in 1869 his compensation is alleged to have been fixed at four-elevenths, and $3,500 to have been again allowed him for living expenses. In each year the final payment of “ the remaining one-third” is alleged to have been conditional or optional, as previously alleged with respect to the agreement for the year 1867.
The claim of the plaintiff, as stated in the complaint, and as he testified at the trial, is that such “remaining one-third” was withheld by the defendant, at the end of each year, upon the understanding and agreement that it should be used in the business as a part of the capital and subject to its risks, until the maturity of defendant’s notes (all of which were to mature January 1, 1873); but, that in case the business proved profitable, it should then be paid with interest.
It is conceded that, the business did prove profitable to and beyond that date. The evidence bearing upon the controverted point is conflicting, complicated and voluminous. It appears to have been carefully examined and considered by the referee, who had all the advantages afforded by personal observation of the parties. A thorough and searching scrutiny has failed to satisfy me that his conclusions are incorrect, or that the plaintiff has failed to make out his case by a preponderance of credible evidence. I concur with the referee in the belief that the payment to plaintiff of the reserved one-third was conditional only upon the *174 successful or profitable conduct of the business durfhg the period fixed for its retention, and was not optional with the defendant, or dependent- upon his satisfaction with the plaintiff, or upon his “whim” or caprice.
The only question of law discussed on the argument related to the construction and' legal effect of certain receipts, purporting to be receipts in full, signed by the plaintiff and delivered by him to the defendant upon the accounting between them which was had at the close of each year.
The receipt of December 31, 1869, upon which the defendant relies as an absolute bar to the plaintiff’s claim in this action, is in the following terms :
“New York, December 31, 1869.
“Received of Bradley & Smith, thirty-six hundred dollars in cash, and note for four thousand nine hundred and fifteen dollars, being payment in full of all accounts and claims I may have had against them, including salary, commission, bonus or any other claims whatsoever, hereby terminating all business engagements.
“It is expressly understood that- this receipt is an absolute bar to any and all manner of claims excepting notes and engagement made in writing December 14, 1869, between Messrs. Bradley & Smith and myself, for salary for the year of 1870, the salary named being twenty-five hundred dollars.
“ALMANDER CHURCHILL.
“ Witness, Isaac Beale.”
Bradley & Smith was the style under which the defendant conducted his business.
It appears by the testimony of the plaintiff that this receipt, as well as others purporting to be “in full,” signed by him at the close of each of the two previous years, was given at defendant’s special re *175 quest for reasons personal to himself, and upon his express promise and assurance that the plaintiff’s claim to the unpaid portion of his compensation should not be prejudiced thereby. The amount reserved by defendant was not then due, and would not become due for a period of three years. It does not appear that there was any controversy or difference between the parties, or that any compromise of a disputed claim was sought to be effected. The plaintiff received nothing at the time of signing the receipts unless it be the defendant’s notes therein mentioned, to which he was confessedly entitled. There was, therefore, ho consideration for any waiver, abandonment or release of his claim to the unpaid portion of his compensation. Moreover, the language of the receipt in terms confines its operation to claims which the plaintiff may have had at the time of executing it. Construing its language in the light of the surrounding circumstances, and without in any respect varying its terms, I am of opinion that it was intended to embrace only such claims and liabilities as were then presently due and enforceable, and that it did not and was not intended to relate to that part of plaintiff’s compensation, which it had previously been agreed between the parties should remain as capital in defendant’s business and subject to its risks for the three years next ensuing, and to which the plaintiff then had no claim and could have none until the condition should be fulfilled upon which his right would accrue.
The answer contains no averment of accord and satisfaction or of a release, and the evidence would not, as I think, sustain such defenses had they been properly pleaded. It is clear that the claim in suit has never been paid, and the receipts given by the plaintiff, although purporting to be in full and even to be an “absolute bar to all claims and demands,” do not in my opinion conclude him from proof of that fact *176 (Ryan v . Ward, 48 N. Y. 204; Bliss v. Shwarts, 65 Id. 444).
The judgment appealed from should he affirmed with costs.-
Curtis, Ch. J., and Freedman, J., concurred.